UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ANGELA BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:10CV1841MLM |
| | ) | |
| MORTGAGE DEFENSE PROGRAM, | ) | |
| LLC, REBECCA ALEXANDER, | ) | |
| ODESSA RODGERS AND | ) | |
| CARLA GAINES, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the court on plaintiff's Motion for Sanctions [against *pro se* defendant Carla Gaines] [Doc. 24] and Motion for Default Judgment [against defendants Mortgage Defense Program, LLC, Rebecca Alexander and Odessa Rodgers] [Doc. 10].[1] On July 29, 2011 a hearing was held on both Motions. Neither the defendants nor counsel for the defendants appeared. Plaintiff was present in person and represented by counsel. Testimony was adduced and oral argument heard.[2]

## BACKGROUND

Plaintiff Angela Brown ("plaintiff") filed this lawsuit against defendants Mortgage Defense Program, LLC ("Mortgage Defense"), Rebecca Alexander

---

[1]    It is to be noted that the Clerk of the Court entered a Clerk's Default pursuant to Fed.R.Civ.P. 55(a) against Mortgage Defense Program, LLC and Rebecca Alexander on January 10, 2011 and against Odessa Rodgers on April 5, 2011 for failure to file an Answer or other responsive pleading.  See Docs. 13 and 23.

[2]    The transcript of this hearing is cited herein as "Tr." followed by the appropriate page(s).

("Alexander"), Odessa Rodgers ("Rodgers") and Carla Gaines ("Gaines") on September 30, 2010.  Defendant Mortgage Defense's business was purportedly to assist its clients in obtaining mortgage modifications.  Defendants Alexander and Rodgers were co-organizers of defendant Mortgage Defense.  On information and belief defendant Alexander has an ownership interest in defendant Mortgage Defense. She also appears to be the company's managing partner.  Defendant Rodgers appears to be the company's paralegal, and defendant Gaines appears to be the company's lawyer.

The Complaint sets forth several counts: Count I alleges violations of the Missouri Merchandising Practices Act against defendants Mortgage Defense and Alexander.  Count III alleges violations of the Missouri Foreclosure Consultant Act against defendants Mortgage Defense and Alexander.  Count V alleges violations of the Missouri Credit Services Organization Act against defendants Mortgage Defense and Alexander.  Count VII alleges the Unauthorized Practice of Law against defendants Alexander, Rodgers and Gaines.  Count VIII alleges Negligence against all defendants. Count X alleges Fraudulent Misrepresentation against all defendants. Count XII alleges Breach of Contract against defendant Mortgage Defense.  The intervening Counts are for punitive damages (Counts II, IV, VI, IX and XI).

The defendants were all properly served with plaintiff's Complaint. Defendants Mortgage Defense, Alexander and Rodgers failed to answer or otherwise defend. Defendant Gaines filed a *pro se* Anwer but has failed to participate in the lawsuit in any manner since that time.

Counsel for plaintiff made every reasonable effort to assure that all the defendants had notice of the hearing.  Tr. **8**-**9**.

## MOTION FOR SANCTIONS

In her Motion for Sanctions plaintiff requests the court to enter default judgment against defendant Gaines pursuant to Rule 16 and 37 of the Federal Rules of Civil Procedure and Local Rules 3.04 and 5.03.

Defendant Gaines timely filed an Answer to plaintiff's Complaint.  Tr. 9-10. The court's Order Setting a Rule 16 Scheduling Conference required the parties to submit a joint proposed scheduling plan.  Despite numerous attempts by plaintiff's counsel to engage defendant Gaines in the preparation of the proposed scheduling plan, defendant Gaines did not respond in any manner.  On February 17, 2011 the court held a Rule 16 Conference and defendant Gaines failed to appear or attend by telephone. The Case Management Order set the scheduling plan to be followed by the parties.  Defendant Gaines has failed to participate in any manner.  She failed to submit her Rule 26(a)(1) disclosures; she failed to respond to interrogatories and requests for production; counsel for plaintiff has made every good faith attempt to obtain discovery responses.  Tr. 10-11

Pursuant to Rule 16(f) of the Federal Rules of Civil Procedure and Local Rule 5.03, the court may render a default judgment against a party that has failed to appear at the Rule 16 Scheduling Conference and failed to comply with the court's Scheduling Order.

Pursuant to Rule 37(c)(1)(C) of the Federal Rules of Civil Procedure the court may render a default judgment against a party who fails to provide its Rule 26(a)(1) disclosures.

Pursuant to Rule 37(d) of the Federal Rules of Civil Procedure and Local Rule 3.04 the court may render default judgment against a party for failure to serve answers to interrogatories after the moving party's good faith attempt to obtain them. Pursuant to Rule 37(f) of the Federal Rules of Civil Procedure, if a party fails to participate in any discovery plan, the court may order that party to pay the other party's reasonable expenses, including attorneys' fees.

Defendant Gaines has failed in each of the above respects.  Pursuant to the Rules, default judgment is the appropriate sanction under the circumstances of this case.

**Motion for Default Judgment**

Default is appropriate when a party fails to plead or otherwise defend. Fed.R.Civ.P. 55(a).  A default judgment may be entered by the court (1) if the plaintiff applies to the court for such a default judgment, (2) parties who have appeared are given notice at least seven (7) days before a hearing and (3) the court conducts a hearing to determine the amount of damages.  In the present case, plaintiff properly applied to the court for a default judgment.  Although defendants Mortgage Defense, Alexander and Rodgers did not appear, every reasonable effort was made to timely notify them of the hearing as set out above.  Tr. 8-9.  The court held a hearing and plaintiff testified as to her damages.  Default judgment is the appropriate remedy under the circumstances of this case.

- 4 -

**Damages**

Plaintiff testified she is self-employed as personal trainer and physical therapist at her present husband's gym in Clayton, Missouri.  Her business is called Fitness Design and Physical Therapy.  She and her husband, Matt Brown, have been married for 3-1/2 years.  She has a son who is six and a stepson who is 15.

Because of the actions of the defendants, she lost her home at 3550 Rowan Drive in St. Louis in a foreclosure sale, filed for bankruptcy and sustained other damages.  Plaintiff testified she purchased her home on Rowan Drive in 2004 for $246,746.  Pl. Ex. A.  The loan for the home was $225,303.  Pl. Ex. B.  The down payment was $21,443.00 with monthly payments of $1,598.  Pl. Ex. C.  She made payments until May of 2006.  At that time she was in the process of getting a divorce and had to buy out her ex-husband in order to get his name off the loan.  She re-financed and her mortgage payments increased because she had to take out a home equity loan in order to pay off her ex-husband.  She made the increased payments until October, 2006 when she re-financed again.  Pl. Ex. D.  Her monthly payments were then $1,637.75.  Pl. Ex. E.  She made those payments until October, 2009.  Her home equity line statement shows an approximate $100 monthly payment.  Pl. Ex. F.

In September, 2009 plaintiff contacted defendant Mortgage Defense through its agent defendant Alexander, through phone and through FaceBook.  Defendant Alexander is plaintiff's husband's cousin.  Defendant Alexander had a post on FaceBook that her business could help lower monthly mortgage payments.  Because

the mortgage on her home was an ARM, plaintiff anticipated her payments would go up.

Defendant Alexander told plaintiff that in exchange for $3,000, with $1,500 to be paid immediately, defendant Mortgage Defense would conduct a forensic audit on her mortgage with HSBC , obtain a low fixed interest rate for her home by filing a federal lawsuit against HSBC, based on HSBC's violation of federal law and protect her home from foreclosure and from marks against her credit.  She was instructed by defendant Mortgage Defense to cease making her mortgage payments.  When plaintiff asked Alexander why she had to stop making her mortgage payments, Alexander told her that "the program they did for helping people get their mortgage payments lower, it wouldn't work if you kept making your mortgage payments..." Tr. 20.  Defendant Alexander informed plaintiff that she would send her a written contact for her to sign and that plaintiff should return the contract along with re-financing papers and a $1,500 cashier's check.  Alexander said she would send plaintiff a copy of the signed contract; however, she failed to do so.

On September 15, 2009 plaintiff posted an e-mail on defendant Alexander's FaceBook. Pl. Ex. H.  She once again asked if she should make her mortgage payment because HSBC had been calling her for the money.  Defendant Alexander responded "No, you are in forensics now...we'll be fine...don't make it...".

On September 29, 2009 plaintiff again contacted defendant Alexander by FaceBook. Pl. Ex. I.  She asked if the letter had been sent to HSBC because they kept calling her for payments.  Defendant Alexander replied that the letter plaintiff was to send certified would be there the following day.  She told plaintiff to tell HSBC that

she had filed a federal lawsuit against them and would make no payment until the dispute was settled.  She told plaintiff that if HSBC asked plaintiff what it would take to settle, she should answer "the fair amount of [my] home" based on the appraised value plus 2 percent fixed interest.  Because plaintiff had been specifically advised by defendant Mortgage Defense and defendant Alexander to stop making mortgage payments, she stopped in spite of the fact that she had the financial resources to make the payments.

In December, 2009 HSBC informed plaintiff that it was proceeding to foreclose on her home.  Plaintiff then checked with defendant Alexander who assured her that everything was fine.  Pl. Ex. J.  In January, 2010 defendant Mortgage Defense informed plaintiff she had to pay the remaining $1,500 before it would proceed with its work.  She paid the money.  Pl. Ex. K.  Up until that point, all defendant Mortgage Defense had done was instruct plaintiff to send letters.

On January 19, 2010 defendant Gaines filed a Complaint in the District Court for the Eastern District of Missouri.  Pl. Ex. L.  The Complaint alleged plaintiff had a right to rescind the mortgage however, that right had lapsed in October, 2009.

On January 21, 2010 plaintiff's house was sold by HSBC in a foreclosure sale.  Defendant Mortgage Defense did not tell plaintiff she had a right to remain in her home.  In February, 2010 Fannie Mae (which acquired title from HSBC) filed an unlawful detainer action against plaintiff.

Plaintiff filed a petition to set aside the wrongful foreclosure and temporary restraining order based on instructions from defendant Mortgage Defense.  Plaintiff retained a lawyer, Mr. Jeff Witt, to assist her with these proceedings and the petition

and temporary restraining order were dismissed in April, 2010; however, plaintiff consented to judgment in Fannie Mae's action for unlawful detainer.

On May 21, 2010 plaintiff filed for bankruptcy on the advice of defendants Alexander and Rodgers. They told her it would prolong the proceedings so they could file another lawsuit against HSBC. Plaintiff retained a lawyer, Rochelle Stanton, to handle her bankruptcy.

A Complaint filed on plaintiff's behalf against HSBC was dismissed in June, 2010 and her bankruptcy case was closed in October, 2010.

Plaintiff testified as to the damages she sustained as a result of the defendants' actions:

She paid $21,443 as a down payment for her home in 2004.

She paid approximately $43,136 in mortgage payments from March, 2004 to May, 2006.

She paid approximately $7,475 in re-financed mortgage payments from July, 2006 to October, 2006.

She paid approximately $54,046 in re-financed mortgage payments from December, 2006 through August, 2009.

She paid approximately $3,400 for her home equity line from December, 2006 through September, 2009.

All of this totals to $129,500.

She paid $3,000 to defendant Mortgage Defense program for its "services."

She paid $1,800 to retain attorney Jeff Witt (Pl. Ex. M) and $894 to retain attorney Rochelle Stanton (Pl. Ex. N).

She retained Paul Passanante & Associates to prosecute the instant case for a 1/3 contingency fee.

In addition, she paid $573 to move and relocate her belongings.  (Pl. Ex. O). She is now renting a home.  She paid $3,590 for a security deposit.  (Pl. Ex. P) These additional expenses total $9,857.  The total of her monetary damages comes to $139,357.

Plaintiff testified the emotional stresses and difficulties have been extreme. Summarizing plaintiff's testimony on these issues would not do her justice and reference to the transcript better reflects the extraordinary injury to plaintiff, her husband and children.  <u>See</u> Tr. 32-39.

The actions of defendants have taken a toll on defendant and her family; her credit rating has significantly decreased; she has been forced to move to a rented home because she was unable to secure a loan for a new home; her children were forced to change schools; she has had both business and personal credit cards cancelled and can only obtain new ones with low limits; she is unsure of her future when her lease is up this fall.  Compensation for these injuries is surely in order.

Pursuant to §484.020 Revised Statutes of Missouri, plaintiff requests an additional $9,000 against defendants Alexander, Rodgers and Gaines which is treble the amount for their unauthorized practice of law in the state of Missouri.

Plaintiff has also made a claim for punitive damages to punish defendants for their unconscionable actions by which they took merciless advantage of her.  The Attorney General of Missouri has said "This Attorney General's Office has instituted

a zero tolerance policy for any mortgage modification firm that preys on and cheats desperate home owners."

Repeatedly telling plaintiff to cease making her mortgage payments knowing that HSBC would foreclose shows complete indifference and conscious disregard of plaintiff's rights.

Knowing that HSBC was foreclosing on plaintiff's home and failing to prevent or cure the foreclosure shows complete indifference and conscious disregard to plaintiff's rights.

Informing plaintiff that the only way to save her home was to file a Complaint in federal court against HSBC when defendant Gaines, a member of the Georgia Bar, knew or should have known that it was meritless shows complete indifference and conscious disregard for plaintiff's rights.

The court finds that applying the zero tolerance policy for the defendants' scams by entering an award of punitive damages against the defendants is appropriate.  In addition, a specific damage award for compensatory damages and damages for the unauthorized practice of law is appropriate.


/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this __8th__ day of September, 2011.